# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-222 |
| DAVID EASLEY | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

David Easley blatantly circumvented a passenger security checkpoint by posing as an airport employee and smuggled prescription-strength drugs through airport security in violation of federal law. Once caught, he lied to federal authorities to protect himself and his cohort. Easley's criminal conduct, his prior criminal record, and his persistent failure to strive under community supervision, all support the need to impose a term of imprisonment in this case.

For these reasons, as well as for the reasons provided below, the government recommends a sentence at the low end of the advisory guideline range of 4 to 10 months' imprisonment.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard. *United States v. Grier*, 475

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors. A full analysis of the applicable sentencing factors show that the appropriate sentence in this case is a within-guideline range sentence.

## I.    **BACKGROUND**

On July 7, 2025, the defendant, David Easley, pled guilty to an Information charging one count of entering an airport area in violation of security requirements, in violation of 49 U.S.C. § 46314(a), (b)(2). Easley admitted his participation in a March 9, 2024 scheme wherein the defendant, a ticketed passenger, knowingly evaded the Transportation Security Administration's (TSA) security checkpoint at the Philadelphia International Airport by posing as an authorized

airport employee and using a non-public employee door to enter the airport's passenger terminal without first being screened by the TSA.

The defendant entered a guilty plea agreement which bound the government to make whatever sentencing recommendation the government deems appropriate provided its recommendation is within the applicable Sentencing Guidelines range. *See* Guilty Plea Agreement, ¶ 2(a).

## II.    <u>CRIMINAL CONDUCT</u>

On March 9, 2024, defendant David Easley knowingly and willfully bypassed airport security by using the badge identification of an airline employee to access a secured, sterile airport area.

On that date, Easley was a ticketed domestic airline passenger, scheduled to travel from Philadelphia, Pennsylvania to Atlanta, Georgia, and departing from the Philadelphia International Airport (PHL) at approximately 7:05 p.m. Easley has never been employed with the Philadelphia International Airport.

At approximately 6:35 p.m., defendant Easley walked through the terminal ticket counter area with Tariq Henson, a Philadelphia airport employee. Together, the two walked together to the public side of a security access door. The defendant used an airport Secure Identification Display Area (SIDA) badge belonging to Henson and typed a passcode on the keypad which permitted Easley access to enter the secure area of the airport. The defendant thereafter entered a restricted area for employees and other authorized persons that is between the public, pre-security ticketing area and the public, post-security "sterile" terminal. Easley did not go through TSA screening before entering this secure area. Henson later entered that same door using a different employee's SIDA badge. Together, the two walked through the secured areas of the airport, including the

tarmac.

At approximately 6:39 p.m., the defendant and Henson exited Door DC2020. This door provides access from the secure area to the public terminal area of the airport where screened passengers have access to board their flights. That evening the Transportation Security Administration (TSA) was conducting random security inspections to prevent prohibited items from entering the sterile area. Both were stopped and searched by TSA officers. Henson was found to be carrying a red Wawa bag containing approximately 4 to 6 bottles of Promethazine liquid. Promethazine is a cough syrup. Because it contains a limited amount of codeine, it is regulated as a Schedule V substance and requires a prescription.[2]

Shortly thereafter Henson ran away from the TSA officers with the red Wawa bag. The TSA officers chased Henson but were not able to apprehend him at that time.

Easley admitted to the officers that he had paid $50 to an airport worker— whom he claimed that he just met—to skip the TSA line because he was running late for his flight. However, a later review of Henson's cell phone showed that the defendant and Henson had been communicating for the past four months. Of relevance, during a January 31, 2024 chat conversation, Henson directed Easley to come to the airport and use a Wawa bag to "get that shit to me."

---

[2] While this substance is not illegal, abuse of promethazine is well known. The term "lean" refers to a mixture of a prescription cough syrup containing codeine, soda, and sometimes hard candy. *See e.g.* "Resurgence in Abuse of 'Purple Drank' U.S. Department of Justice. Available at: https://www.justice.gov/archive/ndic/pubs43/43924/sw0008p.pdf ;"Lean: Slang for Getting High With Cough Syrup" Stop Medicine Abuse.Org. Available at: https://stopmedicineabuse.org/resource/lean-slang-for-getting-high-with-cough-syrup/.

III.    **SENTENCING CALCULATION**

    A.    **Statutory Maximum Sentence**

The maximum sentence that may be imposed on the defendant is a term of imprisonment of 10 years, a term of supervised release of 3 years, a fine of $ 250,0000, and a special assessment of $100.

    B.    **Criminal History**

Easley has been under court supervision since he was a juvenile. Easley has been convicted of criminal offenses on eight different occasions and has served various terms of imprisonment throughout his life.  His criminal history includes the following:

On October 29, 2007, in Philadelphia County, the defendant was found guilty of possession of a controlled substance and resisting arrest after being found in possession of crack cocaine and marijuana, and sentenced to time served to 23 months of confinement, followed by one year of probation. In 2010, the defendant violated his supervision and was sentenced again to time served to 23 months, followed by two years of probation. In 2012, his probation was terminated. Since he committed the instant offense less than 15 years after completing this sentence, he received three criminal history points under Section 4A1.1(a).

On December 31, 2009, in Philadelphia County, the defendant was convicted of simple assault after punching a police officer, causing an injury which required medical treatment. He was sentenced to 6 to 18 months imprisonment. Since he committed the instant offense less than 15 years after completing this sentence, he received three criminal history points under Section 4A1.1(a).

It would appear that during this same 2009 attack, the defendant punched a second officer, as he was convicted again for simple assault on that same date. For this second assault conviction,

Easley was initially sentenced to two years' probation. In 2012, he violated his supervision and was sentenced to 6 to 12 months of confinement. He received no criminal points for this conviction.

On June 12, 2023, in Delaware County, the defendant pled guilty to terroristic threats and possession of an instrument of crime, after pointing a gun at another person during an argument. He was sentenced initially to four years' probation. In August 2023, the defendant was resentenced to 30 days to 23 months of imprisonment followed by two years' probation. Since he committed the instant offense within 15 years of committing this Delaware County crime, he received three criminal history points under Section 4A1.1(a).

Easley's nine criminal history points result in a criminal history category of V.

**C.    Sentencing Guidelines Calculation**

The Probation Office correctly calculated the defendant's advisory guideline range to be 4 months to 10 months' imprisonment, based on a total offense level of 4 and a criminal history category of V. The calculation is based on the following:

| Sentencing Guideline | Level |
|---|---|
| Base Offense Level - USSG § 2B2.3(a): | 4 |
| Trespass in Airport - USSG § 2B2.3(b)(1)(A)(iv) | +2 |
| Acceptance - USSG § 3E1.1(a) | -2 |
| Final Offense Level | 4 |

## III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates

that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). [3]

---

[3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (*quoting United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

A.    <u>**Consideration of the 3553(a) Factors Regarding Imprisonment**</u>.

David Easley travelled to the Philadelphia Airport with the intent to smuggle himself and codeine-laced cough syrup past the Transportation Security Administration. When confronted by authorities, Easley lie to protect himself and his coconspirator Henson. Certainly, the defendant's flagrant skirting of the security measures enacted to protect our airports is serious and his sentence must be reflective of his conduct.

Significantly, a review of his prior criminal history shows that a non-custodial sentence will not act to deter this defendant. His prior criminal record shows that he has consistently failed to abide by the terms of his court supervision. Whether in Philadelphia County or most recently in Delaware County, while on community supervision, the defendant has returned again and again for failure to abide by his court-ordered conditions of release. Indeed, while pending sentencing before this very Court, he flat out failed to report to his Pre-Trial Services Officer and remained unaccountable for <u>several</u> <u>weeks</u>. *See* PSR at p.4 ¶ 10.

When he finally did show up, the defendant tested positive for marijuana. *Id.* The defendant's claim of confusion as to who he needed to contact may have made sense – if the defendant had not already absconded from his Delaware County Probation Officer for months; lied to law enforcement in this instant case; or did not have a criminal record showing his familiarity with the criminal justice system. Moreover, even after resurfacing and relearning who he needed to report to – the defendant to this day has still failed to report to his federal pre-trial officer as required. Easley's post-plea conduct suggests he is unconcerned and unrepentant about his federal crime. As he has shown little respect for the rules – whether they be imposed at the Philadelphia Airport or by the federal court system, the government respectfully submits that a term of imprisonment will act to instill respect for the law and to deter the defendant from

committing future offenses. Finally, in addition to specific deterrence, this Court's sentence must also send a message to others that the smuggling of people beyond airport security – for any purpose – will be significant.

There is nothing in the defendant's background which mitigates his conduct. The defendant acknowledges he had a "great childhood." PSR ¶ 56. He was raised in a stable household with two working parents. PSR ¶ 54. He reports good relationships with his siblings, who are also employed and run stable households. PSR ¶ 55. No members of his immediate family have a history of addiction, mental health issues, or involvement in the criminal justice system. PSR ¶ 55. Thus, there are no mitigating circumstances in the defendant's background that warrant a sentence below the guidelines range.

The defendant reported marijuana and promethazine syrup abuse. He is physically healthy. He is almost 40 years old but yet has no verifiable employment history. He reported that he is currently unemployed and receives food stamps to cover his monthly grocery bills. All the rest of his expenses are reportedly paid for by his fiancée. *See* PSR at p. 20. In sum, the defendant is a healthy 40-year-old man with no significant medical issues who appears to have chosen not to engage in lawful employment. There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

The government that while a custodial sentence is appropriate in this case, a sentence at the lower end of the advisory guidelines range is an appropriate reflection of the defendant's acceptance of responsibility in terms of his willingness to plead guilty to an Information. The government's recommended sentence also acknowledges that the defendant's criminal history score includes crimes that occurred when the defendant was younger. These circumstances, along

with the additional sentencing factors analyzed above, all support a within-guideline range sentence.

## B. **Supervised Release**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least two years is warranted. As explained above, the defendant presents a lengthy record of criminal conduct and repeated failures to successfully complete terms of supervision. His background supports the need to provide additional federal supervision upon his release to the community in order to protect the community from further crimes of the defendant and to afford adequate deterrence to criminal conduct. Close supervision following release from imprisonment is warranted to aid his reentry to society and to instill in the defendant the significance of his crime.

- 10 -

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as the special conditions as set forth by the United States Probation Office: drug testing and treatment, educational services/vocational training; and gambling treatment.

IV.    **CONCLUSION**

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Priya T. De Souza*
PRIYA T. DE SOUZA
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served through the Electronic

Case Filing (ECF) system to the parties below:

Thomas Eagan, Esquire
*Counsel for David Easley*

Carolyn DeMayo
*United States Probation Officer*

*/s Priya T. De Souza*
PRIYA T. DE SOUZA
Assistant United States Attorney

DATED:  December 5, 2025.